UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIAN WININGER,                    :    3:02CV1671 (WWE)
        Plaintiff,_____  :
_____    :
v.                                 :
                                   :
WILCOX FUEL, INC.; THE WILCOX      :
FUEL, INC. PROFIT SHARING          :
PLAN; DAVID G. FOSTER; and         :
JOHN G. McCALL,                    :
        Defendants                 :

**RULING ON DEFENDANTS' MOTION TO DISMISS**

_____The plaintiff Brian Wininger ("Wininger") commenced this
action pursuant to the Employee Retirement Income Security Act of
1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., alleging a
violation of the Act when Trustees of the defendants' 401k profit
sharing plan deviated from a year-end asset valuation formerly
used to determine the value of an employee's lump sum retirement
benefits, which had the effect of cutting the plaintiff's
anticipated retirement benefits by $101,247.80.

Pending before the Court is the defendants' motion to
dismiss the complaint for failure to state a claim pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the
reasons set forth below, the defendants' motion will be granted.

**FACTS**

For the purpose of this motion, the following facts are
taken from the complaint, motion briefs, and report of the
parties' planning meeting.  Brian Wininger worked for the

1

defendant Wilcox Fuel, Inc. for 33 years from September 23, 1968, to October 22, 2001.  Wilcox Fuel, Inc. is a business corporation organized and existing under the laws of the state of Connecticut, licensed and qualified to do business and does business in the state of Connecticut.  At all relevant times, Wininger was a Plan participant in Wilcox Fuel's profit sharing plan, as the term participant is defined in ERISA, § 3(7), 29 U.S.C. § 1002(7).

Defendant Wilcox Fuel, Inc. Profit Sharing Plan is an employee benefit plan as defined in § (3)3 of ERISA, 29 U.S.C. § 1002(3).  The Plan may be found in Connecticut because approximately 20 employees of Wilcox Fuel earn and receive benefits in Connecticut.  Defendant Wilcox Fuel, Inc. is the Plan sponsor and the Plan administrator.  Defendants David G. Foster ("Foster") and John G. McCall ("McCall") are the named Trustees of the Plan and Wilcox Fuel's senior managers (collectively referred to as the "Trustees").

The Wilcox Fuel, Inc. Profit Sharing Plan is a profit sharing plan under which Wilcox Fuel makes discretionary annual contributions, which are allocated to individual employee accounts pursuant to a compensation-related formula set forth in the Plan.  Under the terms of the Plan, the funds placed in the participants' individual accounts are managed and invested by Foster and McCall.  The Plan provides that upon retirement or

2

termination of employment, an individual Plan participant is entitled to his Vested Aggregate Account balance determined as of the most recent valuation date coinciding with or immediately preceding the date of distribution.

Wininger alleges that the Trustees chose to retroactively deviate from a consistently followed retirement plan procedure of using year-end asset valuations when distributing lump-sum retirement benefits from the Plan. By changing the plan asset valuation dates, the Trustees, allegedly at Wininger's expense, enriched the interests of the small group of remaining Plan participants, including the Trustees who approved the deviation, and altered a plan-mandated procedure which had been uniformly followed until the Trustees significantly cut Wininger's benefits by changing the Plan valuation date.

Wininger alleges that after timing his retirement in substantial part on Wilcox's assurance that it would apply the Plan stipulated retirement date, Wininger found his anticipated retirement benefits reduced by $101,247.80. Wininger brings this action seeking additional benefits and, in the alternative, equitable relief requiring the Trustees to recalculate his benefits using the stipulated valuation date in the Plan.

The defendants claim that due to stock market losses in 2000-2001, the Plan's assets lost significant value. On the advice of pension experts and pursuant to the express authority

granted to them in the Plan documents, the Trustees and administrators of the Plan, Foster and McCall, made the decision to revalue the assets of the Plan in October 2001, in an effort to provide a current and accurate valuation of the Plan's assets, and to ensure that market losses were spread equally over all participants.  The defendants contend that because their actions were permitted under the terms of the Plan and applicable law, and as the relief sought by the plaintiff does not constitute appropriate equitable relief within the meaning of the statute, Wininger is not entitled to any additional benefits or appropriate relief.

## DISCUSSION

**Motion to dismiss**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268 (1994). In addition, the allegations of the complaint should be construed favorably to the pleader.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1973).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in

4

support of his claim which would entitle him to relief. <u>Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957).

**Standard of Review for civil action**

The validity of a claim to benefits under an ERISA plan is
likely to turn on the interpretation of terms in the plan at
issue.  The Supreme Court has held that "a denial of benefits
challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed
under a *de novo* standard unless the benefit plan gives the
administrator or fiduciary discretionary authority to determine
eligibility for benefits or to construe the terms of the plan.
Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo*
standard of review applies ... regardless of whether the
administrator or fiduciary is operating under a possible or
actual conflict of interest. Of course, if a benefit plan gives
discretion to an administrator or fiduciary who is operating
under a conflict of interest, that conflict must be weighed as a
factor in determining whether there is an abuse of discretion."
<u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).
If the Plan grants the administrator discretionary powers to
decide questions of pension benefits, then the question is
whether the fiduciaries' interpretation of the contract was
arbitrary and capricious.  The arbitrary and capricious standard
is more deferential than *de novo* review.  Under the arbitrary and
capricious standard of review, a court will not overturn the plan

5

administrator's action if the administrator's documentation reasonably supports his position. <u>Francia v. WondeRoast, Inc. Profit Sharing Plan</u>, WL 625705 *6 (W.D.N.Y. 1995).

In the present case, the Wilcox Fuel, Inc. Profit Sharing Plan manual specifically states, in pertinent part, the powers and duties of the administrator on page 35, § 8.2: "The powers and duties of the Administrator will include (g) construing and resolving any question of Plan interpretation. The Administrator's interpretation of Plan provisions, including eligibility and benefits, is final and unless it can be shown to be arbitrary and capricious will not be subject to 'de novo' review. If there is more than one Administrator, the Administrators may delegate specific responsibilities." Based on controlling authority and the specific designation of a standard by the Plan, the Court will apply the arbitrary and capricious standard to the case at bar.

The Second Circuit has consistently viewed the arbitrary and capricious standard of review as one designed to avoid excessive judicial interference with pension plan administration and has stated that under this standard of review, the lawful discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness. Further, the Second Circuit has recognized that the judicial role is limited to determining whether the trustees' interpretation

6

was made rationally and in good faith, not whether it was correct. <u>Francia v. WondeRoast, Inc. Profit Sharing Plan</u>, WL 625705 * 7.

ERISA provides for suits by beneficiaries for breach of fiduciary duty with respect to the interpretation of plan documents and the payment of benefits. Because Wininger seeks a personal remedy, the Court must view his suit as a claim for benefits under 29 U.S.C. §1132(a)(1)(B). In <u>Firestone</u>, the Supreme Court held that a trustee of a plan may be given power to construe disputed or doubtful terms, and in such circumstances, the trustee's interpretation will not be disturbed if it is reasonable. <u>489 U.S. at 111</u>. In <u>Ganton Techs, Inc. v National Indus. Group Pension Plan</u>, 76 F.3d 462, 466 (1996), the Second Circuit held that where "plan documents give the trustees the discretion to interpret plan terms, we will not substitute our judgment for theirs unless the trustees' interpretation is arbitrary and capricious."

In the case at bar, the Plan's value was determined, in accordance to the terms of the Plan, at least annually on the last day of each Plan year. In previous years, this year-end valuation had been used when distributing lump-sum retirement benefits from the Plan. Wininger was of the belief that this year-end valuation would determine his lump-sum retirement benefit as well. Based on the anomaly of drastic stock market

losses in 2000 – 2001, and on the advice of pension experts, the Trustees made the decision to adopt an interim Plan evaluation date which had the effect of determining, and reducing, Wininger's retirement payout.

Wininger brings a variety of claims in five counts, including, *inter alia,* failure to provide an adequately informative summary plan document ("SPD"), equitable estoppel, breach of Plan terms, self-dealing, and breach of fiduciary duty. The threshold issue here is whether or not the Plan afforded the Trustees the right to take the action they did, and whether their actions were arbitrary and capricious. The Court finds that the Trustees took fair and equitable action in adopting an interim valuation date, one which served to spread the significant stock market losses over the individual accounts of the entire group, and which prevented any party from escaping the repercussions of the stock market downturn. Any other action on the part of the Trustees would have had an inequitable result, with Wininger retiring with a lump-sum payout that did not reflect the true value of his formulaic share, and leaving the remaining participants in the Plan to shoulder all the losses from the stock market downturn. The remaining participants had already suffered the same proportional losses to their individual account valuations as those suffered by Wininger. To pay Wininger his lump-sum retirement benefit based on the 2000 year-end valuation

8

would have increased the losses of the remaining participants. Had the interim valuation been done to determine and equitably increase Wininger's retirement payout due to an anomalous situation caused by a bull market, it is highly unlikely that there would have been any objection by Wininger or any of the Plan participants.

The Court finds that the Trustees' actions were not arbitrary and capricious, and were within the discretion given to the Trustees under the terms of the plan.  The Court will not substitute its judgment for the judgment of the Plan administrators.

**CONCLUSION**

For the reasons set forth above, the Court finds failure to state a claim on all counts of Wininger's complaint, and the defendants' motion to dismiss (Doc.# 7) pursuant to Fed.R.Civ.P. Rule 12(b)(6) is GRANTED.  The Clerk is instructed to close this case.

SO ORDERED this 12th day of January, 2004, at Bridgeport, Connecticut.

_____/S/_____

WARREN W. EGINTON, Senior U.S. District Judge

9